# THE STATE ex rel. MARSHALL et al. v. BUTLER COUNTY et al.

### In Banc, June 29, 1901.

1. **Swamp Lands:** INJUNCTION: PAYMENT OF JUDGMENT. A pending injunction to enjoin the county court from using the proceeds of swamp lands already sold to drain other swamp lands still held by the county (the basis of the suit being that the proceeds of the sale of such lands can not be used for any other except school purposes), is no bar to the payment, out of the proceeds of swamp lands in the county treasury, of a judgment for attorneys' fees, which the county owed for services rendered by the attorneys in recovering such lands for the county.

2. ———: ATTORNEYS' FEES: PAYMENT OUT OF TRUST FUND. Under the statute authorizing the county court, as a special trustee to pay attorneys employed for the recovery of swamp lands belonging to the county, "out of any funds arising from the sale of such swamp lands or out of the general revenue fund of said county," the attorneys are entitled to the satisfaction of their fees out of the proceeds of those lands, and can compel payment therefrom by mandamus.

3. ———: ———: DISCHARGE. Where attorneys made a contract with the county court to act as attorneys for the county for the recovery of swamp lands belonging to the county and to clear up the title to other lands, under which express auhority they rendered services and incurred liabilities and were proceeding to render such other services as were required, until, without fault on their part and without any lawful excuse, the court declared the contract of employment cancelled, and took the work out of their hands and gave it to others to finish, such attorneys are entitled, under such circumstances, to have whatever judgment a jury may render them as the value of their services. considered as compensation for services rendered, and to have the same paid out of the proceeds in the county treasury arising from the sale of the swamp lands of the county.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

*A. N. Edwards, W. C. Marshall* and *Geo. L. Edwards* for relators.

*David W. Hill* for respondents.

VALLIANT, J.—This is an original mandamus suit, in which the relators seek to require the defendants, who are Butler county and the judges of the county court, to pay, out of the proceeds of swamp and overflowed lands now in its treasury, a judgment rendered against the county on account of its liability under a contract made with relators in its capacity as trustee of those lands.

The record shows that title to a large quantity of such lands had, under an act of the General Assembly in 1868, passed to the county in trust for school purposes, and that in 1895, through causes which it would be useless now to discuss, the title to nearly all the land had either passed out of the county or become involved and clouded; much of it was held adversely and much of it was being denuded of its timber which was its chief value; suits were pending and others threatened against the county, seeking to recover all that apparently remained of the trust property. In 1895 the General Assembly passed an act (Laws 1895, p. 44) authorizing counties in that condition to employ attorneys to recover such lands and to protect and clear up the title to such of it as was threatened or clouded, and to pay the attorneys so employed out of the general county treasury or out of proceeds of such lands. Under that authority the county court of Butler county employed the relators as attorneys at law to render the services in that act

contemplated and agreed to pay them therefor $5,000 and eight per cent of the value of the lands recovered, or the title of which was cleared. Immediately upon their employment the relators entered upon their duties, incurred expenses and rendered services until, without fault on their part and without any lawful excuse, the county court declared the contract of employment cancelled and refused to allow relators to represent the county in that matter and employed other attorneys to do what relators had been employed to do. Up to that time the petition informs us that relators had incurred liability for abstracts of the records affecting the title to those lands to the amount of $3,000 and had incurred other expense; they had rendered some services and were ready to proceed to render whatever were necessary, but were prevented from doing so by the act of the county court. Upon that state of facts, for their cause of action, they brought suit against the county and recovered a judgment for $13,500, which is in full force and unpaid. There is now in the county treasury of the proceeds of those lands more than sufficient to pay the relators' judgment and the object of this suit is to require its payment out of that fund.

The defendants in their return do not deny any of these facts. The only facts stated in their return as if affording a reason for not paying the judgment are that no certificate of the clerk of the circuit court showing that such a judgment was rendered was filed in the county court and that in another suit they are enjoined from paying out any of that fund except for school purposes. They also state in their return as a legal proposition that as this is a general judgment against the county it can not be paid out of the proceeds of those school lands.

Upon the hearing of the case the counsel representing the defendants stated that it was the wish of the defendants to pay

the judgment out of the proceeds of those school lands in preference to paying it out of the county revenue and the only reason they had not so paid it was that they interpreted the injunction referred to as forbidding their doing so.

The return of the defendants and the statement of their counsel put at rest any question that might have arisen under the Act of 1895 as to the discretion of the county court in the matter of payment of the debt out of the general fund of the county or of the proceeds of the school lands. The fact that the judgment of the circuit court has not been certified to the county court has no significance.

So far as the injunction is concerned, it does not interfere with the duty of the defendants in this case. That is a suit to enjoin the defendants from using the proceeds of swamp lands already sold to drain other swamp lands still held by the county, and whilst there is some general language in the decree to the effect that the proceeds of such lands can not be used for any except school purposes, yet that language is used in connection and with reference to the particular proposed use prohibited, that is, to drain other lands. If the defendants had paid this judgment out of that fund they would not have been in disobedience to the injunction.

The only question remaining in the case is, are the relators entitled to satisfaction of their judgment out of the proceeds of those lands in the hands of the county? That the county was the trustee of these lands, that the trust property was in dire need of such services as the contract with relators called for, in fact, that its preservation depended on the faithful and intelligent rendering of such services, are facts that very clearly appear from the record. Like the natural law of self-preservation, the law under such circumstances makes it the duty of a trustee to do what is absolutely necessary to save the estate. The act of the Legislature referred to (Laws 1895, p. 44) only

emphasized that duty, and signified that the county was free to employ other legal services than those which the prosecuting attorney and circuit attorney were expected to render, and authorized the county court, if it should see fit to do so, to charge the expense to the county revenue, otherwise to the trust estate. Without that act of the Legislature the county court would have had no authority to impose that burden on the county; it would rest alone on the trust estate. But the Legislature in the express terms of the act recognized that an emergency existed and as a part of its policy conferred upon the county court the discretion of paying for the services out of the county treasury, which power was doubtless conferred to secure the services in the event a satisfactory agreement could not be made looking alone to the trust property for remuneration. But it appears that in this instance it was not unnecessary for the county court to involve the county revenue and therefore the contract was limited in the main to the trust property to be recovered or cleared.

The form of the judgment rendered in this instance is that of a general judgment against the county and the point is made that such a judgment can not be satisfied out of a trust fund. That is a correct abstract proposition, and it would be applicable here if there were nothing else in the record to except this case from its effect. But the record before us shows that the circuit court which rendered the judgment was by the pleadings in possession of all the facts, and we are justified in this proceeding in concluding that the verdict and judgment were responsive to the case stated in the petition. Under the Act of 1895 (now sec. 4951, R. S. 1899) it was in the discretion of the county court making the contract to pay for the services to be rendered either out of the county treasury or out of the trust fund, and a similar discretion would follow in the payment of a judgment for services rendered on such con-

tract.   If the county court were exercising a discretion in this matter this court would not interfere by mandamus to direct or control that discretion; but the defendants do not assume the position that they should be allowed to pay the judgment out of the general county treasury; on the contrary they say by their counsel at the hearing that it would not be just to the people of the county to pay it out of the county treasury and that they would, in the exercise of their discretion, pay it out of the trust fund if free to do so, that is, if free from the injunction above mentioned.   If the judgment was in fact an award for the value of services actually rendered, and if the fund in the treasury was the result of those services, there would be no room to question the legality of paying the award out of the fund.   But in point of fact after the relators entered upon the performance of their duties under the contract, had rendered some services and incurred heavy personal liability, the defendants prevented them from further performance of their contract and employed other attorneys to finish the work they had begun and this judgment represents what the jury and the circuit court adjudged the relators were entitled to under those conditions.   Now what does right and justice under those circumstances demand?

There is something in the nature of the services of an attorney at law that renders a contract, calling for the performance of the same, peculiar.   When the performance of the services has been entered upon and then cut off by the willful act of the client, and the services continued by another, it is not only often impossible to determine the value of the services up to the time of his dismissal, but also even the effect of the employment itself on the ultimate result of the case.   And under such conditions it has been held that the attorney was entitled to recover the full contract price as if he had performed all that he agreed to do.   [Kersey v. Garton, 77 Mo. 645; Mc-

Elhinney v. Kline, 6 Mo. App. 94; Moyer v. Cantieny, 41 Minn. 242; Reynolds v. Clark Co., 162 Mo. 680.] Who can say in this case that whatever of success has resulted in the litigation in reference to those lands was not attributable in a large degree to the work begun by the relators, or to the course marked out by them?

We do not say that a trustee by his willful wrong can impose a liability on the trust estate; the contrary is the law; but here the trustee entered into a contract by express authority of the statute and bound the estate for its fulfillment, and then dismissed the relators after the work was begun and employed others to finish it. The statute authorizing this contract does not say that the attorneys shall be paid out of the proceeds of land recovered by their services, "but out of any funds arising from the sale of said swamp and overflowed lands or out of the general revenue fund of said county or counties."

As the county court in making the contract with relators, and in afterwards repudiating it, were acting not in their ordinary capacity as ministers of the county affairs, but as trustees of the particular estate, and as the act of the General Assembly under which they acted authorized them to contract with reference as well to the trust fund as to the county revenue fund, and with reference to the one no more than to the other, if we are going to say that they can not by their wrongful act impose a burden on the trust fund, we must also say neither can they so burden the county revenue fund, and it would result that a contract expressly authorized, chargeable on either or both of two funds, may be made and broken and yet neither fund can be reached.

But we do not put the compensation to which the relators are entitled in this case altogether in the category of damages for a wrongful act. They made a contract under which they rendered services and incurred liabilities and were proceeding

State ex inf. v. Borden.

to render such other duties as were required when the work was taken out of their hands and given to others to finish; under those circumstances they are entitled to have the compensation which the jury awarded them considered in this proceeding as compensation for services rendered.

The peremptory writ is awarded. *Sherwood, Robinson, Brace* and *Gantt, JJ.,* concur; *Burgess, C. J.,* dissents; *Marshall, J.,* not sitting.