## JOHN M. McCALL, Appellant, v. HATTIE ATCHLEY.

**Division One, March 3, 1914.**

1. **CONTRACTS:  Attorneys: Contingent Fees: Breach: Measure of Damages.**  Lawyers' contracts for contingent fees are valid and enforcible in Missouri; and a client cannot, by settlement out of court or by the voluntary dismissal of his action, deprive the attorney of his compensation.  That compensation, governed by the terms of the contract, may consist of a proportion of the amount recovered as well as of a sum certain; and damages for a breach of the contract should be fixed at the agreed price for the services.

2. ———: ———: ———: **Recovery and Judgment.**  An agreement for a proportion of whatever amount may be recovered in a suit means the amount realized in property or money, and not a mere interest in the judgment.

3. ———: **Performance:  Reasonable Time:  Demand.**  When one agrees to pay a sum of money or do a collateral thing, and no time is specified therefor, the law implies that it shall be done in a reasonable time.   Hence, when a reasonable time has elapsed, the contractee has the right to maintain suit without previous demand.

4. ———: **Attorneys:  Contingent Fee:  Conveyance of Land: Breach:  Measure of Damages.**  Where a woman employed attorneys to propound a will then being contested, and contracted with them that she would give them one fourth of the property in value willed to her if the will should be sustained, or one fourth of whatever should be recovered in said action by compromise or otherwise, and after they had filed an

answer to the contest, she compromised upon a conveyance to her of five sixths of the property given her by the will, allowing judgment to go against her, and then refused to compensate the attorneys, a count in the petition of the attorneys in their suit against her, setting forth the contract and alleging that by reason of the foregoing facts they became entitled to the value of one fourth part of the lands conveyed to her, and charging that, although often requested so to do she has refused to pay it, states a cause of action upon the contract for damages for refusal to convey the lands.

5. ———: ———: ———: ———: **Petition: Two Counts: Damages and Specific Performance.** A plaintiff cannot in one count of his petition ask damages for the breach of a contract to convey lands, and in another count, resting on precisely the same facts and depending upon the same legal construction for the title it asserts to the remedy, ask specific performance of the same contract.

6. ———: ———: ———: ———: **Specific Performance not Decreed.** A contract employing a lawyer to defend a will contest, by which the client agrees to give the attorney one fourth of the property in value given her by the will if it be sustained, or one fourth of whatever be recovered by compromise or otherwise, otherwise said attorney to receive no compensation, will not be specifically enforced at the suit of the attorney. The contract is not certain; it is ambiguous; a conveyance according to its terms would leave the attorney a tenant in common with the client; and, finally, it is not mutual, in that the client could not enforce specific performance by the attorney.

Appeal from Adair Circuit Court.—*Hon. Nat M. Shelton,* Judge.

REVERSED AND REMANDED (*with directions*).

*John C. McCall pro se; Higbee & Mills* of counsel.

(1) The first count of the petition states a good cause of action. The demurrer admits all the facts pleaded; the execution of the will devising 240 acres of land to defendant, the death of the testator, probate of will and suit by the only child and heir to contest it, the employment, in writing, by defendant on behalf of herself and her ward of plaintiff and the other at-

torneys to defend the suit and propound the will, and to give them one-fourth of the property in value devised to them if the will should be sustained, or one-fourth of whatever might be recovered by them in said action by compromise or otherwise. It avers compliance by the attorneys, that defendant secretly compromised with contestant and received a conveyance from him of 200 acres of land devised to her of the value of $8000, a refusal to defend the suit and judgment declaring that it was not the last will of deceased, and refusal to pay her attorneys, the assignment of the interest of Higbee & Mills in the contract to plaintiff. The contract was expressly authorized by Secs. 964 and 965, R. S. 1909. Defendant cannot justly accept with one hand the benefits of the contract and with the other withhold payment. Wait v. Railroad, 204 Mo. 491. (2) If plaintiff was not entitled to money judgment, then the second count states a good cause of action for a judgment for specific performance of the contract declaring plaintiff entitled to an undivided one-fourth part of the 200 acres obtained by defendant in compromise of the litigation. Defendant had the right to settle her cause of action propounding the will without the consent of her attorneys, but their right under their contract of employment was liquidated by the settlement. Hurr v. Railroad, 141 Mo. App. 222.

*H. F. Millan* for respondent.

(1) The circuit court committed no error in sustaining the demurrer to the petition. (2) The contract sued on is set out in, and made a part of the petition, and averments as to the meaning or construction of the contract are not admitted by the demurrer. Blaine v. Knapp, 140 Mo. 241. (3) The rule of pleading is more stringent in bills for specific performance than in other cases. Neudower v. Baker, 121 Mo. 273. (4) In Jordan v. Davis, 172 Mo. 599, the plaintiff sued for money collected by defendant as plaintiff's attor-

ney and improperly retained by defendant. The defendant by way of offset set up in his answer that the plaintiff by written contract employed him to bring a suit against one Chouteau for $31,900 claimed by said Jordan as a commission due him from Chouteau on the sale of real estate, agreeing by said contract to give Davis one fourth of all sums recovered. He alleged that Jordan after the suit was brought failed and refused to give security for costs as required by the court and that the suit was dismissed by the court by reason of such failure. He claimed judgment for one fourth of the amount of said claim of $31,900. Judge Burgess, who delivered the opinion, on page 609 says, "If it is true as claimed by defendant that plaintiff failed to comply with the terms of the contract in consequence of which the suit was dismissed, then the defendant's remedy if he complied with the contract on his part was for damages for breach of contract or upon *quantum meruit* for whatever his services were reasonably worth—but in no event under the circumstances disclosed was the measure of damages one fourth of the sum that might possibly have been recovered." On the same question see Duke v. Harper, 8 Mo. App. 296. (5) The sections of the statute cited by appellant have nothing to do with this case. It is not a question here of what kind of contracts the parties may make—but what kind of a contract did they make. There was no restraint on defendant's right to compromise the action. She had a perfect right to settle out of court, and without the consent of her attorneys. Her rights in this regard are not restricted as they might have been. They saw fit to make a contract limiting their rights to a part of what was recovered in the action. It is certainly plain that plaintiff cannot recover on the contract. Plaintiff may have some other cause of action but it is not stated in the petition. The first count of the petition is for a money recovery. This plaintiff is not entitled to under the

contract. The second count is for specific performance. This is not authorized under the contract and facts stated.

BROWN, C.—The petition consists of two counts. The first states that the plaintiff is an attorney at law as are also Edward Higbee, John C. Mills and Walter Higbee, the last named three composing the firm of Higbee and Mills; that in May, 1906, one Nathaniel M. Ervin of Adair county died testate devising 240 acres of land in said county to the defendant and certain other lands to her ward Noble Edward Dean, a minor, and leaving as his sole heir his son Harry N. Ervin; that upon the probate of the will in said county Harry N. Ervin brought suit against defendant and her said ward to contest the will; and while said action was pending the defendant employed the plaintiff and Higbee and Mills for herself and ward to defend said action by the following writing:

"Kirksville, Mo., September 10, 1906.

"We, Hattie Atchley, for herself and as guardian and curator for Noble Edward Dean, employ John M. McCall, and Higbee and Mills, attorneys, of Kirksville, Mo., to defend the action brought by Harry N. Ervin, in circuit court of Adair county, Mo., to contest the will of Nathaniel M. Ervin, deceased, and agree on behalf of myself and said ward to give said attorneys one-fourth of the property in value willed to us in the will of said deceased, if said will is sustained; or one-fourth of whatever is recovered by us in said action by compromise or otherwise; otherwise said attorneys shall receive no compensation.

"They agree to undertake the defense of said will and give said matter their best attention.

"(Signed) Hattie Atchley, for myself and Noble E. Dean."

That plaintiff and Higbee and Mills accepted the terms of said employment and filed an answer in said

cause duly propounding the will and were at all times ready, able and willing to comply with the terms of said contract on their part and did in fact comply with it.

That while said cause was pending the defendant secretly and without the knowledge or consent of plaintiff or of said Higbee and Mills and for the purpose of cheating and defrauding her said attorneys settled and compromised said action and refused to make any defense thereto; that by the terms of said compromise it was agreed between said Harry N. Ervin and defendant that defendant should make no further defense in said suit but should let judgment go against her by default and that the said Ervin would thereupon convey to her in fee two hundred acres fully described in the petition of the lands devised to her in said will; that said land was of the value of $8,000; that the terms of this compromise were fully carried out, the said Ervin taking judgment that said will was not the will of Nathaniel M. Ervin and conveying the two hundred acres of land to defendant, and that she thereupon took and still retains possession thereof, while said judgment remains in full force; by reason of all of which her said attorneys became entitled to receive the full compensation provided in said contract; that is to say, "the value of one-fourth part of said lands so conveyed to defendant by said Harry N. Ervin, but the defendant, although often requested so to do, has refused to pay plaintiff and the said Higbee and Mills or either of them the one-fourth of the value of the property recovered as aforesaid by compromise and settlement or any part thereof, and still refuses."

The petition then alleges the assignment to plaintiff of the interest of Higbee and Mills and asks judgment for $2000.

The second count states all the same facts; that by reason of the premises plaintiff and Higbee and Mills "became and were entitled to receive and recover

from the defendant the one-fourth part of said lands so conveyed to the defendant by the said Harry N. Ervin as aforesaid;'' a sufficient demand of defendant for the conveyance thereof; her refusal; and prays a decree vesting in plaintiff the title to said one-fourth part of said lands and for partition. Each of these counts sets forth the facts with all the details necessary to a full understanding of the theory upon which it is founded.

The defendant demurred to each count upon the ground that it did not state facts sufficient to constitute a cause of action and the demurrer was sustained as to both. The plaintiff refusing to plead further judgment was given for defendant from which this appeal is taken.

I. It has long been settled by adjudication in the courts of this State that contracts between attorney and client by which the latter undertakes to pay to the former fees contingent upon the result **Contingent Fees.** of litigation pending or to be instituted, are valid and binding upon the parties, and will be enforced at law according to their terms. [Kersey v. Garton, 77 Mo. 645; State ex rel. v. Butler County, 164 Mo. 214; Duke v. Harper, 8 Mo. App. 296; Price v. Haeberle, 25 Mo. App. 201; Moss v. Richie, 50 Mo. App. 75; Cosgrove v. Burton, 104 Mo. App. 698.] It is equally well settled that the compensation so provided for may consist of a proportion of the amount to be recovered or saved by the prosecution or defense of the suit, as well as of a sum certain. Although it has always been assumed that by entering into such a contract the client does not surrender the control of the suit, it seems equally well established that he cannot, by a settlement out of court, or by the voluntary dismissal of his action, deprive the attorney of the benefit for which he has stipulated. The special reasons for the application of this rule to the peculiar relation existing between attorney and client were stated by this

court in Kersey v. Garton, supra, and it has been legislatively recognized by the act of February 25, 1901, "to prevent frauds between attorneys, clients and defendants; making agreements between attorney and client a lien upon the cause of action." [Laws 1901, p. 46.]    That in such cases the measure of damages should be fixed at the price agreed to be paid can no longer be open to question. [Kersey v. Garton, supra, State ex rel. v. Butler County, supra.]

At the time of the making of the contract sued on a statutory action had already been brought to contest the will of Nathaniel M. Ervin, under which the defendant claimed title to 240 acres of land, by the testator's sole heir, who would, of course, be entitled to the same land if the will should not be sustained. The burden was thus cast upon the defendant to propound and prove the will or surrender her claim to the land. This was what the defense of the action meant, and it was under these circumstances that she employed the plaintiff and Higbee and Mills to undertake it. By the contract of employment she agreed to give said attorneys one-fourth of the property *in value* willed to her in the will if it should be sustained, or one-fourth of whatever should be recovered by her in said action by compromise or otherwise. If nothing should be so recovered the attorneys were to receive no compensation.

Under this agreement the attorneys undertook her defense, thus disqualifying themselves from any adverse employment with reference to the same matter. The acceptance of the employment implies that they went far enough in the investigation to satisfy themselves that a defense should be made, and to qualify themselves to file an answer, which they did. Upon the coming in of that pleading the heir got together with the defendant and secretly, and without the knowledge or consent of her said attorneys, compromised by conveying to her in fee five-sixths in area of all the

lands she claimed as devisee under the will, surrendering one-sixth or forty acres. She then permitted judgment to go against her in the case although repeatedly requested by her said attorneys to appear and make defense. That this was a compromise of the case is freely stated by the respondent in her brief. The compensation of the attorneys in such a case was specially stated in the contract as ''one-fourth of whatever is recovered by us in said action by compromise or otherwise.''

The defendant's argument consists entirely of a play upon the words ''recovered in said action'' as used in the contract. She assumes that a recovery in the action necessarily means the recovery of a *judgment*. This is a highly artificial and limited use of the word recovered. According to Webster, to recover means ''to gain, as compensation for injury or debt,'' toward which the judgment is only one of the steps. An agreement for a proportion of the amount recovered in a suit necessarily means the amount realized in property or money, and not a mere interest in the judgment unless otherwise expressed.

"Recovery" and "Judgment."

The very question suggested by the respondent was considered by the parties at the time the contract was written. The suit was one in which the only judgments authorized were whether the paper was or not the will of the testator. If it were answered in the affirmative the devised lands were hers in their entirety; if in the negative she took no part of them. The contract expressly provided for these, the only possible results of the suit, by stipulating that should the will be sustained the attorneys should have one-fourth in value of the property willed to the defendant, which includes the entire two hundred and forty acres. It was contemplated, however, that the will might not be sustained by the judgment of the court, yet that some means might be adopted, by compromise or otherwise, by which she should receive something out of the mat-

ter in suit. The very word selected by the parties indicated some proceeding by which the subject of the controversy should be taken out of the hands of the court and relegated to the voluntary disposition of the parties. "By compromise or otherwise" included every disposition which could be made by mutual agreement of the subject-matter of the suit, and consequently of the suit, other than by the judgment of the court establishing the will, which had already been provided for. The words "recovered by us in said action" meant gained or received out of the subject of the judicial controversy then pending, and which was the subject of the agreement.

It may be that the apparent earnestness with which attorneys have insisted on an interpretation of this agreement so utterly at variance with that first and simple rule of construction that the words of a contract are to be considered in the light of their application to its subject-matter, has led us into unjustifiable waste of space in its consideration. The first count of the petition sufficiently states a cause of action upon the contract, and if its allegations be true, the measure of damages should be fixed at one-fourth the value of the lands conveyed to the defendant in the compromise. There is nothing in Jordan v. Davis, 172 Mo. 599, cited by defendant, inconsistent with this conclusion. While this count declares upon the contract as one by which the attorneys "became and were entitled to receive and recover from the defendant *the value* of one-fourth part of said lands," and charges that, although often requested so to do she has refused to *pay* it, it sets forth the paper fully; and is equally good as a count in damages for refusal to convey the land; and this is the construction we have given it. When the defendant received the deed from Ervin, on March 12, 1907, it became her duty absolutely and unconditionally to convey the land according to the terms of the contract, and

**Measure of Damages.**

no demand was necessary to fix her liability. [1 Cyc.

**Performance:**
**Reasonable**
**Time: Demand.**
694.] When one agrees to pay a sum of money or do a collateral thing, and no time is specified therefor, the law implies that it shall be done in a reasonable time. Hence, when a reasonable time has elapsed, plaintiff has the right to maintain an action without previous demand. [Id. 699-700.] That a reasonable time elapsed during the twenty full months before the institution of this suit does not admit of question. And even were a demand necessary, the ground of nonliability upon which the defendant is now placing her defense, shows that a demand would have been unavailing. [Id. 699.]

It follows that as to the first count the demurrer should have been overruled.

II. The second count is in the nature of a bill in equity for specific performance of the same contract.

**Petition: Count**
**for Damages and**
**one for Specific**
**Performance.**
Upon precisely the same facts it asks for a decree of title to the undivided one-fourth of the two hundred acres of land received by the defendant in the compromise, and for partition in accordance with the rights and interests so adjudged.

Ever since the case of Brinkman v. Hunter, 73 Mo. 172, it has been held that under our code the same writing may be declared upon in different counts of the petition so as to meet the possible views of the court as to its legal effect, although but one judgment may be rendered and one satisfaction had. Whatever count is sustained by the judgment in such cases, the others necessarily fail.

This petition presents an interesting deviation from this general rule. The two counts rest on precisely the same facts and depend upon the same legal construction for the title they assert to the remedy

McCall v. Atchley.

asked in each. To be entitled to a decree upon the second count he must be entitled to a judgment upon the first as we have already interpreted it, but he cannot recover upon both at the same time. In his dilemma, without expressing a preference of his own, he lays the matter before the court, and asks it to elect for him which remedy he will take. This is a burden the courts do not assume. While the primary right of the plaintiff is to have the interest in the land for which his contract calls, that contract has been broken by the defendant. She has refused to perform the duty which she assumed, and he must resort to the law for that measure of redress which it provides for the injury. In such cases the injury may consist solely in deprivation of a contract right to make a clean and substantial profit from the goods of his adversary. The law gives him this in full measure by way of money compensation, without regard to the evil effects upon the other. Sometimes he is dissatisfied with this, and says that the compensation the law gives by way of damages does not make him good or cannot be obtained and he calls upon equity to give him the full measure of relief. Equity then takes into consideration its effect upon the delinquent as well as upon him who seeks its aid. If it is a contract for a pound of flesh, the injured party must be satisfied with market value, the measure of relief afforded by the law. It is out of such necessities that the equitable doctrine of specific performance has grown. The law affords the primary remedy, while the relief that equity affords is ancillary and supplementary, and as is said by Mr. Pomeroy in his excellent book on Specific Performance, sec. 4, "it is confined to those classes of agreements for whose breach the mere payment of pecuniary damages is acknowledged to be either impracticable or inadequate." We think this petition should conform to that rule by suggesting some reason why the recovery of damages under the first count would not give relief

as easy, practicable and adequate, as the specific per-
formance prayed in the second, or at least by relieving
the court from the burden of making an election for
plaintiff between the two.

III.   While under the present pleadings the de-
murrer was properly sustained to the second count of
the petition, the ultimate right of the
plaintiff to the equitable relief it asks
remains, and may be again raised by
amendment.  It is better that it be fi-
nally disposed of at this time than left
to embarrass and perhaps delay the
final disposition of the case.

*Contract
Employing
Attorney upon
Contingent Fee:
Specific
Performance
not Decreed.*

As we have already shown, under our dual system
of remedial justice as administered at law and in equity,
the court of law, proceeding with the assistance of
juries, afford the primary jurisdiction for the enforce-
ment of private rights and the redress of private
wrongs.  For the violation of contracts they give re-
dress in the form of damages to compensate the loss
suffered.  Cases frequently arise, however, in which
this form of redress is impracticable or inadequate.
The law courts considered it unsafe and were un-
willing to deviate from their uniform methods to meet
the peculiar requirements of sporadic cases, and courts
exercising equity jurisdiction took it upon themselves
to administer what to them seemed the broader and
more equitable remedy of specific performance.   In
doing this, however, they have constantly kept in view
the reasons which first led to their interference, and
while they have, in case of certain varieties of agree-
ments, freely assumed jurisdiction on the ground stated
by this court in Beheret v. Myers, 240 Mo. 58, 77, that
''specific performance produces a practical result, a
more complete and rounded justice than mere money
damages,'' they have also considered that it produces
in some cases a more complete and rounded injustice,

and have used a legal discrimination in the selection of cases for such relief which has led this court and many others to characterize the exercise of the jurisdiction as discretionary; and even as "somewhat of grace." [Beheret v. Myers, supra; Houtz v. Hellman, 228 Mo. 655.] So far as "grace" expresses the idea of favor, or kindness, and discretion refers to the unrestrained exercise of choice or will, these terms are misleading. We do not beg favors, but pursue our rights in courts of equity, and expect them to be administered according to established rules of jurisprudence. In every case where specific performance of a contract to convey land will result in "a more complete and rounded justice than mere money damages" equity will decree it, otherwise it will be withheld. When a contract of that character is legal, perfectly fair in its terms, and the parties stand upon an equality with respect to the remedy, and where its specific enforcement in the light of all the circumstances existing at the time it is sought would not work hardship or injustice to either of the parties, it is safe to say that the relief that puts them in the exact condition contemplated by their contract will be granted as the most effective means of doing complete justice. This doctrine was tersely expressed by Mr. Justice FIELD in Willard v. Tayloe, 8 Wall. 557, as follows:

"It is true the cases cited, in which the discretion of the court is asserted, arose upon contracts in which there existed some inequality or unfairness in the terms, by reason of which injustice would have followed a specific performance. But the same discretion is exercised where the contract is fair in its terms, if its enforcement, from subsequent events, or even from collateral circumstances, would work hardship or injustice to either of the parties. . . .

"The discretion which may be exercised in this class of cases is not an arbitrary or capricious one, depending upon the mere pleasure of the court, but one

which is controlled by the established doctrines and settled principles of equity. No positive rule can be laid down by which the action of the court can be determined in all cases. In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties.''

. IV. There are other circumstances, conditions and incidents upon which the right to enforce specific performance of contracts of this character depends, which bear upon this case. The contract must, among other things, be certain, unambiguous, mutual, and upon a valuable consideration; and must be capable of specific execution through the courts. [Pom., Spec. Perf., sec. 38.] This contract is so far from being certain and unambiguous that the plaintiff himself refuses to take a stand upon its meaning in the very respect upon which he founds his claim to specific performance. In one count he declares upon it as an agreement to pay money, and in the other pleads it as a contract for the conveyance of land. While we have already indicated our opinion as to its legal meaning in this respect, the requirement that to authorize a decree of specific performance against a protesting party it must be certain and unambiguous, is founded upon the equitable theory that the court should withhold this extraordinary relief unless satisfied that in allowing it, it is giving effect to the actual as well as the technical and legal intention of the parties. The fact that the party seeking the relief is himself uncertain may be sufficient ground for its refusal.

V. The contract must be capable of specific execution through the decree of the court. Its performance involves the final settlement of their respective

interests, so that each may go with that which in equity belongs to him, and not their entanglement in new relations so that their last end will be worse than their first. A final decree of the court transferring the title to one undivided fourth of the land would end the controversy so far as the specific performance of the contract is concerned, but inspection of the second count demonstrates that it only involves them deeper. It changes their relation under the contract to that of tenants in common of the land, with all its implied incidents of agency for each other with respect to its occupation, use and improvement. That this is unbearable to the plaintiff is demonstrated by the fact that in addition to his prayer for specific performance, he attempts to relieve himself of the situation in which his success will place him by a prayer for the partition of the land. He does not allege that it is susceptible of division in kind, so that when equity has expended its power to help him, he is liable to find himself in the same position as if he had sued for and recovered as damages for a breach of the contract the value of the land. Equity has no use for such experiments and on that ground will leave him to his action at law.

VI. The contract must be mutual with respect to the right of the respective parties to the equitable remedy. This means that in so far as the consideration upon which the right to specific performance rests consists of an executory agreement, that agreement should be of such a nature that it entitles the party to whom it runs to have it specifically enforced according to its very terms. [Pom., Spec. Perf., secs. 162, 163.] This, according to the author just cited, is the peculiarly distinctive feature of the equitable doctrine of specific performance, and it stands upon the foundation of all equitable jurisprudence, which distributes justice with an impartial hand, and withholds its extraordinary remedies from those who have not submit-

ted themselves freely to its jurisdiction. And this mutuality must exist from the execution of the contract out of which it proceeds. This doctrine finds a forcible illustration in a very recent case in this court. One Houtz acted in the capacity of a holding receptacle and conduit for titles of real estate bought and sold by the Burdeau Real Estate Company, a corporation. The company purchased the land in question from Hellman, taking the contract of sale to Houtz, whose name it signed, paying through him two hundred and fifty dollars upon the purchase price, and promising to pay the remainder of seventy-five hundred dollars on closing the transaction by deed. Houtz brought suit for specific performance, tendering the remainder of the purchase price. Mr. Burdeau, the representative of the company, testified that Houtz was a straw man, and represented him in the transaction. In holding that he was not entitled to the remedy the court said: "If the widow Hellman had sued Houtz on the contract and he had pleaded *non est factum,* and the fact had appeared that he had not signed it, it is no answer to say that she could have shown that the company was authorized to sign his name and bind him. . . . Nor is it any answer to say, as was said at our bar, that by suing on the contract Houtz ratified it and became bound. The widow Hellman was entitled to have him bound at the start. She gave no option to have him bound or not bound as he might elect at some future time. If the price of real estate had gone down instead of up, as it did, and she had sued him for specific performance, she had the right to rest on a certainty that the party to be charged had signed the contract, not upon a mere possibility of being able to prove that the fictitious signature was authorized, or the contract ratified." [Houtz v. Hellman, 228 Mo. 655, 669-70.]

Applying these principles to this case. While in the Houtz case the plaintiff was bound as a matter of fact, the court held that the difficulties that might be

interposed to prevent the defendant from proving it had she sued for specific performance destroyed the mutuality of the contract. In this case the nature of the contract for the personal and professional services of the lawyers is such as to preclude its enforcement in equity by decree for specific performance. Had the case been compromised before they had performed any service, they would be entitled to their entire fee; if not, and they tired of it, they might abandon it, depriving their client of their personal services, the principal thing for which she had contracted, and leaving her only an action for shadowy damages mingled with the fortunes of their successors. The actual outcome in this suit is of itself an illustration of the impropriety of equitable interference in the enforcement of this class of contracts. Equity jurisdiction in such cases rests entirely upon the consideration. It extends its aid because it is unjust that one who pays the consideration should not have in full measure that which he has paid for; and when the rules of law scrimp that measure, equity comes to its aid and rounds it up. But the strict rules of law sometimes heap the measure of justice, as in this case. The most persuasive ground for the interference of equity fails in such cases. In fact it sometimes lays a restraining hand upon the process of the law, and strikes the measure to a level. In this class of contracts the lawyer sometimes loses all his personal expenses and labor; at other times he is more fortunate, and recoups these losses; but there is no more reason for the interference of equity in one case than in the other; and while it refuses to compel him to perform the services in the first, what is more just than that he be left to his legal remedies in the last.

The judgment of the Adair Circuit Court is reversed, and the cause remanded with directions to set aside the order sustaining the demurrer as to the first

count of the petition and to proceed in accordance with this opinion. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur, *Lamm, J.,* in result.