H. H. JONES v. ROBERT B. JONES and ALBERT M. JONES, Appellants. —63 S. W. (2d) 146.

Division One, August 9, 1933.

Clare Magee and Luther & Luther for appellants.

Claude C. Fogle for respondent.

STURGIS, C.—Defendants have appealed from a judgment in plaintiff's favor in a suit for specific performance of a contract by which defendants agreed to convey 180 acres of land in Scotland County to plaintiff. Plaintiff is an attorney at law and alleges that defendants employed him to defend a suit then pending in Scotland County to contest a will, in which suit defendants were interested to the extent of 1158 acres of land in that county, and agreed to pay him on a contingent basis the land now in dispute, a part thereof. The will involved in that suit was the will of Mary M. Thomson, deceased, probated in Scotland County, by which she devised to the defendants here the land now in dispute together with other land making the total of 1158 acres. The testatrix had died without any descendants and these defendants were her cousins, children of her mother's sister, who was yet living, and therefore defendants had no interest in testatrix's property except under the contested will, though their mother was a natural heir, and to an extent interested in having the will annulled, but was not one of the contestants. The contestants were other brothers and sisters of testatrix or their descendants, heirs of Mary M. Thomson, and still other heirs of Mary

M. Thomson who refused to join in the contest were made defendants, as were other devisees in the will and the executor, J. C. Miller. The present defendants were the principal devisees in the will and consequently were vitally interested in defeating the contest case and having the will established in solemn form.

The lawyer plaintiff in this case is the brother of defendants' father and naturally enough these two young men, age twenty-eight and thirty-one and yet living with their father, when they came into ownership of this large landed estate under the will, sought the advice and assistance of their lawyer uncle, this plaintiff. The will contest was not filed in court until nearly a year after the will was probated and it is conceded that in the meantime the plaintiff rendered valuable services to the defendants in connection with matters arising in the probate court, including inheritance taxes, and in obtaining loans of money for them pending the administration of the estate. It also appears that defendants, while having a considerable fortune left them by this will, had little, if any, other property or resources. Plaintiff testified, and defendants did not contradict, that it was understood that plaintiff would be paid reasonably for these services.

Then the suit was commenced by disappointed heirs of Mary M. Thomson to contest her will on the grounds of her mental incapacity to make a will and that same was procured by undue influence and perhaps that the same was not legally executed. These defendants were duly served with process. The testatrix, Mary M. Thompson, while a resident of Scotland County in this State, was temporarily in Colorado and she there executed this will and died there. The executor of the will, J. C. Miller, himself a defendant in the will contest, appeared in court at the return term and his attorney, as attorney for the estate, without being employed or authorized to do so by these defendants or other interested parties, filed an answer for all the defendants, including the defendants in this case. The defendants here naturally talked with plaintiff concerning this will contest, but no definite arrangements to employ him in the will contest case was made until notice was given by the attorney for the executor and accepted by the attorneys for the contestants in the will case to take depositions of very material witnesses living in Colorado, including the attorney who wrote and witnessed the will there, a former resident of Scotland County, Missouri, and the date of taking such depositions in Colorado was near at hand. Then it was, as plaintiff alleges, that the contract sued on here was made, the substance of which is that plaintiff was employed by defendants and agreed to defend for them the will contest case, and defendants agreed to pay him for his services by conveying to him a definite 180 acres of the land devised to defendants and described in the petition.

The petition herein, after alleging the matters preliminary and as inducements, avers that defendants on August 10, 1928, "entered into a contract and agreement with this plaintiff whereby they employed this plaintiff as their attorney to represent them and their interests in the defense of said will contest suit; . . . that under and by the terms and provisions of said contract and agreement this plaintiff was to defray all of his personal expenses in securing evidence in behalf of defendants and in attending the taking of any depositions required therein, and, if other counsel or attorneys should be deemed necessary, this plaintiff was to employ the same at his own expense; that in consideration of the services to be so rendered by this plaintiff thereunder and in payment for all services theretofore rendered by plaintiff to defendants as hereinbefore set out, defendants therein contracted, promised and agreed with this plaintiff that, should he (plaintiff), as their said attorney, be successful in causing the said will of Mary M. Thomson, deceased, to be sustained in said suit then pending in the Circuit Court of Scotland County to contest said will, and secure or procure for defendants the lands therein devised and willed to them as aforesaid, they, the defendants, would give, transfer and convey to plaintiff the real estate above described, containing 180 acres, and would make, execute and deliver to plaintiff their deeds of conveyance thereto for said purpose; but if in said will contest suit the said will was declared by the court not to be the last will and testament of said Mary M. Thomson, deceased, then plaintiff was to have or receive nothing for all of his said services as aforesaid, or for any expense or attorney's fee incurred by plaintiff in the defense thereof." The plaintiff then alleges full performance of the contract by him, culminating in a trial and judgment for defendants establishing the validity of the will in question and confirming the defendants' title to the 180 acres of land in question.

The defendants by their answer deny generally and then say that in the will contest case the executor of the will filed an answer for all the defendants and that his attorney caused depositions of the witnesses to the will to be taken in Colorado and "caused all the necessary proofs to be made to sustain said will in the depositions taken in said cause." The answer then alleges: "Defendants further deny that they entered into the contract described in plaintiff's amended petition and deny that the plaintiff caused said will to be sustained, but that said will would have been sustained without the assistance of the plaintiff as he well knew. Defendants further answering state that they were prior to August 10, 1928, inexperienced in the necessity and employment of attorneys and not acquainted with the amount of fees received by them, and H. H. Jones, being their uncle, had been employed to look after their interests connected with the farms, inheritance tax assessment and the borrowing of some money, and was still in the employ of these defendants when on or

about the said 10th day of August, 1928, upon the false and fraudulent representation of plaintiff that it would be necessary to employ the best legal talent obtainable and that it would cost a large sum of money to properly defend said will contest action, that plaintiff did not consider himself competent to make the defense required to protect their interests, and plaintiff further stated that they would be required to produce a large sum of available cash to pay attorneys' fees and court costs, and the plaintiff well knowing the statements made by him were false and fraudulently made for the purpose of over-reaching defendants, and defendants believing plaintiff's false and fraudulent statements so made to them, they *did agree with plaintiff* that in consideration of plaintiff employing T. L. Montgomery of Kahoka, Missouri, and such other attorneys as would be necessary to employ and to *pay all court costs* in the will contest case therein mentioned the *defendants agreed to give plaintiff 180 acres of land in Scotland County, Missouri;* that plaintiff, prior to the making of the agreement, in company with defendants on or about the 9th day of August, 1928, consulted T. L. Montgomery and as soon as the contract was made with plaintiff Montgomery was not employed as was the main consideration of the contract of employment, and that plaintiff had no intention of employing Montgomery. Defendants further answering state that the contract alleged in plaintiff's petition and in defendants' answer, being an oral contract for the conveyance of real estate, was within the Statute of Frauds and void and of no effect and that defendants are possessed of 1158 acres of real estate and about $10,000 worth of personal property and able financially to pay any judgments that plaintiff may procure for a reasonable attorney fee for his services if any. Defendants further answering state that said oral contract relied upon by said plaintiff is a champertous contract and is therefore void and against public policy.''

On the trial of the case the evidence of each party followed and supported the respective pleadings, differing in the same respects as does the petition and answer. The trial court made a finding of facts in which he sustained the plaintiff on all controverted facts and entered judgment according. The findings of the trial court include a finding that defendants made a contract with plaintiff employing him as their attorney to represent them and their interests in defense of the will contest suit; that the terms and provisions of said contract were that plaintiff was to defray his personal expenses in securing evidence for defendants and in attending the taking of any depositions, and if other counsel or attorneys should be deemed necessary plaintiff was to employ same at his own expense; that in consideration of all services to be rendered and all services already rendered defendants they agreed that should plaintiff be successful in having

the will sustained in the pending suit and secure for defendants the lands therein devised to them, the defendants would give and convey to plaintiff the 180 acres of land in controversy; that otherwise plaintiff was to have nothing for his services or personal expenses or in employing other attorneys. The court further found that plaintiff had fully performed his part of the contract and "that said contract and agreement was fair and just and was fairly entered into by the parties and was not procured by any misrepresentations, fraud or undue advantage on the part of the plaintiff and that said contract was and is not champertous, and that the plaintiff is entitled to the relief prayed for in the petition."

Other facts shown by the evidence will be mentioned in the course of this opinion and it will suffice to say here that while this is an equity case and this court is not bound by the trial court's finding, yet a reading of the records convinces us that the evidence fully sustains the court's finding. It will only be necessary, therefore, to notice defendants' assignments of error.

The first assignment is that the contract is so unconscionable and unfair that it ought not to be enforced in a court of equity. While this is good law if applicable, it will be remembered that this is urged from the standpoint of what occurred after the contract was made rather than from the conditions appearing at the time of its making. It turned out that the plaintiffs in the will contest were unable to find or produce sufficient evidence sustaining the charge of mental incapacity and undue influence to warrant them in trying the case on its merits and they let judgment go by default, though it was necessary for defendants as proponents of the will to prove its due execution and the sanity of the testatrix, which this plaintiff, as defendants' attorney, did do. The case had then been pending a long time in spite of plaintiff's effort to get it heard, and largely to get the matter settled at once plaintiff paid the attorneys for contestants $100 to reimburse them for certain expenses. Neither defendants nor plaintiff at the time of his employment knew that the case would end in this way. The suit to contest the will was brought by able and reputable attorneys and both parties were justified in expecting the case to be vigorously prosecuted. The amount involved was large and defendants stood to lose 1158 acres of good farm land. Plaintiff's fee was contingent on success and while it may seem large, it was about twelve per cent of what defendants would win. Plaintiff stood to lose not only his services but apparently considerable expense, especially as he agreed to employ other attorneys if found necessary, as the parties evidently then thought would be the case. The plaintiff knew he would and in fact did make a trip to Colorado at his own expense in looking up evidence and taking depositions. Plaintiff was also out $60 to local counsel. What is said in Morton

v. Forsee, 249 Mo. 409, 434 and 436, 155 S. W. 765, is applicable here, to-wit: "Nor can we say that either Pitt or his client would have been justified in the conclusion that there was nothing to the case in which the contract was made. The amount at stake is not questioned. The suit was instituted against Mrs. Forsee by a most able and reputable Attorney-General of this State. He was joined in the prosecution by three of the ablest and most reputable lawyers of the St. Joseph bar. Their petition was a formidable document and it sought in all earnestness to divest Mrs. Forsee of $75,000 of her fortune. The suit was evidently one not to be passed over lightly. . . . The fee looks large, but the case considered from all its angles does not leave it looking so large. . The amount involved has much to do in determining a fee."

The evidence fully justifies the finding that no fraud or undue influence was used in inducing the defendants to make the contract of employment. Defendants were of such mature age and business experience (one of them being a high school graduate) as not to indicate their incapacity to make a contract of this character or magnitude. The fact that they had never had lawsuits and were not skilled in estimating attorneys' services in cases like this is no reason for holding the contract void. If such be the test, most business men could make this defense. The evidence shows that defendants' father advised with them in regard to employing counsel in the will contest case and he was present when the contract sued on was made and fully approved of it. In fact, defendants somewhat vaguely accuse their father of aiding his brother in inducing them to make this contract. He testified not only to the making of the contract and its terms, affirming plaintiff's version of the contract, but testified that defendants made it willingly and were well satisfied not only with the contract but with the plaintiff's performance of the same in defending the will case; and that they were not dissatisfied in any way and indicated no intention of repudiating the contract till an outsider with a sinister design told them that they had "got peeled."

It should be noticed that the only material difference in the terms of the contract as stated by plaintiff in the petition and by the defendants in the answer is the defendants say that plaintiff specifically agreed to employ attorney Montgomery to aid him in conducting the defense in the will contest and that he would pay all *costs* and expenses, while plaintiff says he only agreed to employ additional counsel if found necessary and agreed to pay all expenses but not court costs. Such also is the evidence of the respective parties. In the first answer filed by defendants they stated this part of the contract to be "that plaintiff would employ other attorneys."

As to the employment of attorney Montgomery, it appears that plaintiff urgently advised defendants to employ good (defendants say the best) legal talent to defend the suit for themselves and not to

depend on the attorney for the executor to do this for them as such attorney was under no obligations to them in the matter and they should be represented by their own attorneys. Defendants' father joined in this recommendation. Defendants assert and plaintiff denies that he suggested that the executor's attorney and the contestants' attorneys might compromise the case and let the will be set aside, but be that as it may, we have no hesitation in saying that there was nothing wrong or misleading in advising defendants to arrange to be represented by attorneys obligated to them and to look after their interests. Attorney Montgomery was suggested by one or the other as a suitable attorney. All agree that plaintiff expressed a reluctance to handle the case alone or even as chief counsel on account of the responsibility and its importance. So it was that before making the contract in question defendants, with plaintiff, went to see Montgomery about employing him. Montgomery wanted a minimum cash fee of $750, plus expenses for trying the case in Scotland County and there were other matters which deterred defendants from closing the employment of him without considering it further. One of the chief difficulties was that defendants had neither the means nor the inclination to pay any considerable cash or fixed fee, preferring to employ attorneys on a contingent basis. It was the next day after the interview with attorney Montgomery that plaintiff and defendants again took up the question of plaintiff's employment on a contingent basis to represent defendants in this will contest, with the result, as all agree, that plaintiff was employed for a fee of the 180 acres of land involved in that suit. We can readily believe that defendants were anxious to make this contract with the plaintiff because of its contingent basis, in view of defendants' insistence here that they exacted of him a promise to employ attorney Montgomery to assist in any event and that plaintiff obligated himself to pay all costs and expenses, even to court costs, so that defendants would be out nothing. It is further shown that defendants were aware that plaintiff did not employ Montgomery to assist him and at no time made complaint or urged him to do so. In fact, defendants are not objecting now because they lost anything by plaintiff's failure to employ Montgomery to assist him, but rather that they were deceived into believing that they needed any attorney at all. We agree with the court's finding that plaintiff only agreed to employ assistant attorneys in case same were needed.

This leads us to consider the next objection raised, that the contract sued on is champertous and therefore void—this because plaintiff agreed to pay the court costs. While the evidence is conflicting as to whether plaintiff agreed to pay the court costs if he failed to have the will sustained, the evidence is that plaintiff in fact never paid any costs in the case and his actions in this regard support his claim that he did not so agree. The executor of the will paid all

the court costs out of funds of the estate, whether rightly so or not we need not inquire, and so the question was never raised till in this suit. It is raised here as a pure technical defense, not that plaintiff in any way failed to comply with his part of the contract, but that the mere promise to do this vitiates the whole contract. We are satisfied with the court's finding against defendants on this point.

■ Defendants' second assignment of error is that the court erred in enforcing this contract as against the defense that same is within the Statute of Frauds. The contract proved was oral and the statute invoked provides that "no action shall be brought . . . to charge any person . . . upon any contract made for the sale of lands . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith." [Sec. 2967, R. S. 1929.] The plaintiff in his petition does not aver that the contract sued on, though one for the sale of lands, is in writing, but that is not necessary. [Wildbahn v. Robidoux, 11 Mo. 659; Hackett v. Watts, 138 Mo. 502, 511, 40 S. W. 113.] The answer as heretofore set out is peculiar in that it first denies all the allegations of the petition and then denies "entering into the contract described in the petition." This is followed by a specific averment that on the same day stated by plaintiff the defendants, in consequence of certain representations made by plaintiff, "did agree with plaintiff" to employ him in the will contest case and "agreed to give plaintiff 180 acres in Scotland County, Missouri." As we have said, there is no variance between the contract as stated by plaintiff in his petition and the one stated or admitted by defendants in their answer except as to whether plaintiff specifically agreed to hire attorney Montgomery to assist him absolutely or merely to employ attorneys conditionally and as to agreeing to pay court costs. The parties agree that defendants employed plaintiff to defend the pending will contest case and to pay him a fee of the 180 acres of land now sued on and that this fee would cover the fee of additional counsel if needed in the case and all plaintiff's expenses, the dispute being as to court costs being so included. Clearly the essential parts of the contract stand admitted, but defendants deny making the contract "as described in the petition." The answer then sets up that "the contract alleged in plaintiff's petition and in *defendants' answer*" is within the Statute of Frauds and not enforceable.

It seems to be the law that a defendant, when sued on a contract which is within the Statute of Frauds, may invoke its protection by denying the contract, thus compelling plaintiff to prove the same, which can be done only by producing a writing, or defendant can admit making the contract and aver that it was not in writing and accomplish the same result. In 36 Cyc. 781, it is stated: "By the generally established rule, if defendant admits the contract and does

not set up the Statute of Frauds, he cannot have the benefit of the statute, while under a denial of the contract, although the Statute of Frauds is not pleaded, he may have the benefit of the statute; plaintiff must then prove a contract in writing." This court at an early day in Wildbahn v. Robidoux, 11 Mo. 659, said: "When an agreement is denied in defendant's answer, it is not necessary for him to insist upon the statute as a bar. But the complainant in such case must produce legal evidence of the existence of the agreement, which cannot be established by parol proof. . . . If an agreement is alleged to have been made, it is not necessary to aver that it was in writing, for the law will presume that it was a valid one. Formerly, an idea prevailed that a court of chancery was compelled to execute a parol contract admitted by the answer, although the statute was at the same time insisted on against the relief sought. But it is now well settled that a party may admit the agreement and insist on the statute as a defense, but if the agreement is admitted and the statute is not insisted on, a specific performance will be decreed, on the ground that the party has thereby renounced the benefit of the statute." And in Phillips v. Hardenburg, 181 Mo. 463, 473, 80 S. W! 891, it is ruled that the defendant may "admit the agreement and plead the Statute of Frauds as a defense." Certainly, however, when defendants admit the making of the contract alleged in its essential terms, whatever other effect it may have, it relieves plaintiff of the necessity of proving the contract by. clear, cogent and unequivocal evidence, as is required when the making of the contract is in real dispute. Plaintiff is not required to prove by clear and positive evidence what defendant admits. Moreover, plaintiff pleaded and proved full performance by him of the contract sued on. ■ Full or even part performance generally takes an oral contract out of the Statute of Frauds. Thus in Bless v. Jenkins, 129 Mo. 647, 657, 31 S. W. 938, the rule is stated thus: "In such circumstances as these, though the contract be not in writing, the statute will be invoked in vain; the complete performance of the contract by one contracting party forecloses his adversary from interposing the Statute of Frauds as a defense." See cases there cited and McGinnis v. McGinnis, 274 Mo. 285, 297, 202 S. W. 1087; Kemper Mill & Elevator Co. v. Hines, 293 Mo. 88, 239 S. W. 803. The law is, therefore, that performance or even part performance of a contract as a general rule removes the barrier of the Statute of Frauds, but it is necessary and it may be difficult to prove that the acts relied on as part performance were in fact done as part performance of the disputed contract, and oral evidence is not admissible to so prove. Thus the rule is stated in 36 Cyc. 645 to be: "Another test, which is applicable to nearly all . . . alleged acts of part performance, is found in the rule that the act must be unequivocably referable to the contract; or that it must of itself give rise to the inference of some contract relating to the land." And again at page 647: "It

is also an independent rule, sometimes confused with the preceding rule, that when both the oral contract and the alleged acts of part-performance have been proved, the acts must, as a matter of fact, clearly appear to have been done in pursuance of the contract, and to result from the contract and not from some other relation. They must, further, be done in execution of the contract, and be connected with it.'' ■ It is generally held that mere payment of money as part of the purchase price, without anything further being done under the contract, will not remove the statute, and this is true of payment in land. It is so held in Swearengin v. Stafford (Mo.), 188 S. W. 97, where it is said the reason for the rule is well stated in Fry's Specific Performance (5 Ed.), section 613, thus: ''The best explanation of this doctrine is said by Lord Selborne to be that the payment of money is an equivocal act, and not in itself, until the connection is established by parol testimony, indicative of a contract concerning land.'' The defendants here, therefore, invoke the rule stated in 36 Cyc. 672, that ''ordinary personal or professional services, the value of which can be readily estimated, are not by themselves a sufficient act of part performance. Of such nature are the vendee's services as a surveyor, or real estate broker, or legal services.'' But where, as here, defendants, when sued on a contract which is within the terms of the Statute of Frauds, come into court and solemnly admit the making of the contract of employment and the agreement to convey the land to plaintiff in payment of his services, and there is no dispute but that the services were performed, and there is no question but that the services were rendered under and in performance of the contract sued on and clearly referable to it, then the rule invoked has no application.

■ Nor do we think that the fact that plaintiff might have sued and recovered on *quantum meruit* when defendants repudiated the contract and refused to convey the land, as is held in Cozad v. Elam, 115 Mo. App. 136, 91 S. W. 434, and cases there cited, does not preclude his suing for specific performance. While plaintiff had a legal remedy by an action *quantum meruit*, it was not an adequate remedy. In making a contract on a contingent basis each party took his chances and plaintiff won. Such contracts are lawful by statute (Sec. 11717, R. S. 1929) and when reasonable and fairly made the attorney is entitled to ''the benefit of his bargain'' and is not compelled to rely on *quantum meruit*.

■ The suggestion is made that the contract sued on, regardless of the Statute of Frauds, cannot be enforced by specific performance to convey the land for want of mutuality of remedy. The rule is invoked that as the contract obligated the plaintiff to render legal services in defending the will contest on the one hand and the defendants to convey to him the land in question on the other hand, then, as it would be impossible or at least impractical to decree specific

performance against plaintiff, the contract lacks the mutuality of remedy necessary to support a decree in his favor. This is the general rule of equity as to executory contracts, but is not applicable when the party invoking specific performance has fully performed his part of the contract in successfully defending the will contest and defendants cannot refuse to perform their part on the ground that, had plaintiff failed or refused to perform his part, defendants would be without remedy except to sue for breach of the contract. Defendants' contention that this action, though the contract was fully performed by plaintiff, must fail for want of mutuality of remedy, finds some support in the ruling of this court in McCall v. Atchley, 256 Mo. 39, 164 S. W. 593, a case like this one, in which plaintiff, an attorney, sued for specific performance of a contract to convey to him an interest in land for defending a will contest. This court held on demurrer to the petition, which was in two counts, one for the value of the attorney's services and the other for specific performance to convey the land, that the plaintiff could recover at law for his services on the contract, the measure of the damages being the value of the land which defendant promised and then refused to convey, but that the demurrer was properly sustained to the count in equity for specific performance to convey the land for lack of mutuality in face of the fact that the contract had been fully performed by the plaintiff. The court there said: "The contract must be mutual with respect to the right of the respective parties to the equitable remedy. This means that, in so far as the consideration, upon which the right to specific performance rests consists of an executory agreement, that agreement should be of such a nature that it entitles the party to whom it runs to have it specifically enforced according to its very terms. . . . And this mutuality must exist from the execution of the contract out of which it proceeds." The court then cited Houtz v. Hellman, 228 Mo. 655, 128 S. W. 1001, where the court had said that "the widow Hellman was entitled to have him bound at the start." The court then further said: "In this case the nature of the contract for the personal and professional services of the lawyers is such as to preclude its enforcement in equity by decree for specific performance. Had the case been compromised before they had performed any service, they would be entitled to their entire fee; if not, and they tired of it, they might abandon it, depriving their client of their personal services, the principal thing for which she had contracted, and leaving her only an action for shadowy damages mingled with the fortunes of their successors. The actual outcome of this suit is of itself an illustration of the impropriety of equitable interference in the enforcement of this class of contracts. . . . In this class of contracts the lawyer sometimes loses all his personal expenses and labor; at other times he is more fortunate, and recoups these losses; but there is no more reason for the inter-

ference of equity in one case than in the other; and, while it refuses to compel him to perform the services in the first, what is more just than that he be left to his legal remedies in the last.'' We think the court went too far in that case in applying this doctrine to a case where the plaintiff had fully performed the contract on his part. The doctrine should be limited to cases where the contract is yet executory, in part at least, on the part of the one asking specific performance. The writer of that opinion was confusing the law applicable to the necessity of mutuality of obligation with that applicable to mutuality of remedy. The mutuality of obligation ''must exist from the execution of the contract out of which it proceeds,'' and that is what the court ruled in Houtz v. Hellman, supra, there cited, but not so as to the mutuality of the remedy. It is sufficient to warrant specific performance if the mutuality of the remedy exists at the time the suit is brought, and, of course, if the party seeking the remedy has already fully performed the contract on his part, mutuality of remedy ceases to be material and it is no defense. Thus 58 Corpus Juris, 868 says: ''While there have been expressions and indications to the contrary, . . . the more generally accepted doctrine is that it is not essential that mutuality of remedy shall exist at the inception of the contract, nor need it have existed prior to the time of the decree. Accordingly the requirement is satisfied if mutuality of remedy exists at the time the suit is filed.'' So, equitable relief for specific performance will not be granted ''where the contract calls for strictly personal services on the part of plaintiff, such as . . . services, as . . . attorney. The rules aforesaid barring specific performance do not apply where plaintiff has performed his part of the contract.'' [58 C. J. 872-3.] And again at page 874-5 of 58 Corpus Juris, it is said: ''The doctrine of mutuality of remedy applies only to executory contracts and not to executed contracts. Accordingly, if plaintiff has performed his unenforceable promise, the fact that before such performance there was a lack of mutuality in the remedy is no defense, the foregoing being expressly provided in the statutes of some jurisdictions.'' That this is the law generally is shown by the extensive citations from many jurisdictions. The distinction between mutuality of obligation, which must exist at the time the contract is made and inhere in it, and mutuality of the remedy, which needs only to exist at the time of the action and is dispensed with by full performance by the party suing, it pointed out in the annotation in 65 American Law Reports, 45, where it is said: ''The point here raised as to the lack of mutuality of remedy is not to be confused with the question of lack of mutuality of obligation. The matter of mutuality of remedy may properly be presented only upon the assumption that the contract is not invalid because of a lack of mutuality of obligation.'' (Citing many cases.)

Then this is said, page 49: "Even though there is a want of mutuality (of remedy) in the contract at the time it was entered into, this is not regarded as an insuperable barrier to a decree requiring the specific performance of the contract. If a party against whom it would not be practicable to decree the specific performance of a contract performs upon his part, or by other act renders himself subject to such relief, the original lack of mutuality will not preclude granting a decree of this character." Many cases are there cited and it will not be necessary to do so here.

The distinction between mutuality of obligation and mutuality of remedy is recognized in Falder v. Dreckshage (Mo. App.), 227 S. W. 929, where it is held that both are essential to support specific performance, but this is not holding that it is not sufficient if the mutuality of remedy exists when the suit is brought; and it is clearly recognized in that case that it is sufficient if "the services required of plaintiff by the contract have been fully performed," as was the case in Merrill v. Thompson, 252 Mo. 714, 161 S. W. 674; McQuitty v. Wilhite, 247 Mo. 163, 152 S. W. 598; Alexander v. Alexander, 150 Mo. 579, 52 S. W. 256. In Kansas City v. Kansas City Terminal Ry. Co., 324 Mo. 882, 25 S. W. (2d) 1055, 1071, this court held that "the doctrine of mutuality is without application where plaintiff has performed his part of the contract and then seeks specific performance on the part of defendant. [3 Williston on Contracts, sec. 1439.]" This point is ruled against defendants.

The judgment, therefore, should be affirmed and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.