**Marino ALONZO and Louis Alonzo,
Plaintiffs-Respondents,**

**v.**

**Margaret LAUBERT and Forrest D. Laubert,
Defendants-Appellants.**

**No. 51888.**

Supreme Court of Missouri,
Division No. 2.

June 12, 1967.

Rehearing Denied Sept. 11, 1967.

Gershenson & Gershenson and Harry Gershenson, St. Louis, for respondents.

Clyde H. Snider, St. Louis, for appellants.

JAMES A. MOORE, Special Judge.

Plaintiffs, respondents here, alleged in their "bill in equity" that each of them was entitled to a one-sixth interest in a described parcel of realty in the City of St. Louis by reason of an oral agreement with their sister Margaret Laubert and prayed specific performance. Margaret's husband, Forrest, was joined as a defendant because of a subsequent and allegedly fraudulent conveyance creating an estate by the entirety. Defendants denied the agreement and invoked the statute of frauds.

Following trial to the court, a decree was entered which included findings of fact and vested plaintiffs with a one-sixth interest each in the realty. From this decree defendants appeal. Our jurisdiction is obvious. Constitution of Missouri, Art. V, Sec. 3, V.A.M.S.

At the threshold we are presented with the question of whether any error or allegation of error has been preserved for our review. Defendants assign error in the overruling of their motion to dismiss at the close of plaintiffs' case and in the findings and conclusions that the oral contract was enforceable. Underlying both assignments is the refusal of the trial court to treat the oral contract as within the statute of frauds and not removed therefrom by performance.

Present counsel for defendants candidly admits his predecessor's departures from conventional practice in failing to move to dismiss at the close of all the evidence and to include in the motion for new trial specific assignments of error relating to the statute of frauds defense. He urges us to consider the assignments under the plain error review directed by C.R. 79.04 V.A.M.R., "when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

On the other hand, plaintiffs, through their own counsel who both tried the case and argued it on appeal, contend that there has not been compliance with C.R. 79.03 V.A.M.R. in the skeletal motion for new trial.

Neither party has specifically referred to the exceptions to the generally required inclusion in a motion for new trial. Excepted are "questions of the sufficiency of the evidence to support the judgment in cases tried as provided by Rule 73.01", i. e., cases tried without the intervention of a jury. C.R. 79.03 V.A.M.R. Nor has reference been made to C.R. 73.01(d) (except obliquely through cases citing Sec. 510.310 V.A.M.S.). It provides in part, "No findings of fact * * * and no conclusions of law

or objections to the judgment * * * are necessary for purposes of review. The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court. The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature."

Under Civil Rules cited and quoted in part above, defendants may complain here of the failure of the evidence to support the decree. We try the case de novo on the record but giving the deference due the chancellor below as long settled in equity practice and codified in C.R. 73.01(d) V.A.M.R.

The facts may be evaluated more readily with an eye to our statute of frauds. Insofar as it has been invoked here, it reads: "No action shall be brought * * * upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them * * * unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith * * *." Sec. 432.010 V.A.M.S.

Defendant Margaret Laubert made an offer to her four brothers and one sister to give each of them a one-sixth undivided interest in and to a parcel of realty in the City of St. Louis devised to her in the will of their father. The offer was made orally but by handing to each of the individuals affected an unsigned agreement upon her part promising to make the conveyance upon closing of the estate. This document was identified as Plaintiffs' Exhibit 1 and is not in dispute.

The condition of the offer was that the brothers and sister were not to contest the will of their father. A question of fact arises at this point as to whether the offer was to the five jointly or to each severally. The trial court found that the offer was made to each of the brothers and sister. This is a reasonable interpretation of the

facts, although certainly not the inescapable conclusion to be reached. Plaintiffs did agree not to contest the will and agreed in writing to waive their rights as pretermitted heirs. Not only did they not contest the will but they supported their sister in the unsuccessful will contest which was filed by two of the others.

Defendants reasonably argue that the writing or writings did not satisfy the statute. They also contend that the agreement was not taken out of the statute by performance on the part of these plaintiffs because plaintiffs' conduct was not plainly referable to the alleged contract. Defendants rely heavily on Jones v. Jones, 333 Mo. 478, 63 S.W.2d 146, 90 A.L.R. 219, and Scheerer v. Scheerer, 287 Mo. 92, 229 S.W. 192. On the basis of these decisions we are asked to weigh filial piety against avarice.

All parties to the litigation maintain that they did not want to bring their father's name and reputation into disrepute by a contest of his will. Apparently the rationale of this is that it would be disrespectful to his memory to suggest lack of testamentary capacity upon his part. This may be somewhat difficult to accept in the litigious Anglo-Saxon tradition, but the parties to this action were of Spanish descent and perhaps had a different regard for the father figure and to the importance of not exposing him to what might be construed as ridicule or criticism. Plaintffs clearly testified to the fact that they did want to preserve and reverence his memory, but they make it equally clear that they were anxious to acquire the one-sixth interest in the property which would have been theirs had their father died intestate, and which was to be theirs under their sister's promise if they did not contest the will.

■■ This brings us back to the doctrine of part performance which is succinctly stated, "Where one party relying on an oral contract has so far performed his part of it that it would be perpetrating a fraud on him to allow the other to repudiate the contract and to set up the statute of frauds

in justification thereof, equity will regard the case as being removed from the operation of the statute." 37 C.J.S. Frauds, Statute of § 248. It is made clear that this is purely an equitable doctrine and no amount of part performance but only complete and full performance by at least one party will *at law* remove the case from the statute.

■ The doctrine has particular applicability in cases of specific performance. Where *partial* performance is relied upon to take the case out of the statute, additional requirements are imposed. "An act relied on as part performance of an oral contract must be unequivocally and exclusively referable to the contract and must have been done in pursuance of the contract so as to result therefrom and not from some other relation." 81 C.J.S. Specific Performance § 54.

Although the statute of frauds was enacted too late in England to be accepted as part of the common law of Missouri, it was adopted by statute in territorial days in our state and has persisted with little change until the present. Nearly three centuries of interpretation have left a pattern which requires careful examination. Professor Tyrrel Williams wrote: "Unfortunately, many lawyers and judges have been disposed to forget that there are varying classes of contracts specified under the Statute of Frauds, and when correctly applying a principle apposite to the particular type of contract under consideration, often have used broad, general language as if the principle were applicable to all classes of contracts described in the Statute of Frauds." 20 St. Louis L.Rev. 97, 98.

■ As to unilateral performance, the following rules emerge for suits in equity to enforce land-sale contracts. There must have been *sufficient part performance* to convince the chancellor that fraud will result from a literal application of the statute. Mere payment of money is insufficient. "But if services are to be rendered instead of paying money and the services

are fully performed, then the statute cannot be used to produce fraud." Op. cit. at 106.

In the present instance is complete performance by plaintiffs sufficient? If *full* compliance alone is insufficient, then to support the decree below it is necessary to find that the actions of plaintiffs were solely and exclusively referable to the contract. Plaintiffs rely not only on Jones, supra, but also upon Thompson v. St. Louis Union Trust Company, 363 Mo. 667, 253 S.W.2d 116, 120.

We do not find the Thompson case decisive in this matter as it involved the portion of the statute of frauds concerning contracts in consideration of marriage and, in particular, a contract with a deceased party. It is true that the court did find the evidence sufficient to take that case out of the statute and affirmed the action of the trial court in decreeing specific performance.

Much more to the point is Jones v. Jones cited and relied on by both parties. There the contract was one for conveyance of realty in consideration of services rendered by an attorney. The opinion of Sturgis, C., reviewed the authorities and brought the state of the law up to the position which Professor Williams attempted to summarize in his article quoted above. Judge Sturgis recognized the distinction between necessity of the proof (1) of the contract and (2) of performance of its terms where it is clear or even admitted that a contract existed. Jones v. Jones, 333 Mo. 478, 63 S.W.2d 146, 151–152.

Cases based on taking possession of realty such as Willey v. Talkington, Mo., 312 S.W.2d 77, are of little aid in ascribing the reason for the performance of services or for the foregoing of a legal right. Similarly, actions at law such as Austin & Bass Builders, Inc. v. Lewis, Mo., 359 S.W.2d 711, even when containing excellent exposi-

tions of the law, are inapplicable in a suit in equity for specific performance.

We conclude that the contract may be established by a combination of documents not themselves meeting the requirement of the statute of frauds and of oral testimony, followed by proof of performance by the party or parties seeking equitable relief. Such performance must point to the contract itself where there could otherwise be doubt as to its existence or its terms.

It certainly may be argued that motives other than a desire to comply with the alleged contract and thereby obtain a one-sixth part of the estate could be attributed to plaintiffs' failure to contest their father's will; but the clear testimony is that they failed to do so in reliance upon their sister's promise, and that such promise was the proximate cause of their conduct.

The situation here is not like that under the Dead Man's Statute where the testimony itself is forbidden; rather it is a question of whether the testimony adduced is sufficiently clear, cogent and convincing as to cause the chancellor to believe that the conduct described was solely attributable to the oral promise and not to some other possible cause. Certainly it is not required that the matter be resolved to a mathematical certainty, nor would it be appropriate to impose a burden of proof comparable to that in a criminal case.

On the whole record it is reasonable to conclude that plaintiffs' conduct was and is attributable to the promise made to them and not to other causes—not to filial piety but to enlightened self-interest. The chancellor below so found, and we find no reason to disturb his judgment.

The judgment is affirmed.

All of the Judges concur.