Robert MORRIS,
Plaintiff-Appellant-Respondent,

v.

O. L. PIKE et al.,
Defendants-Respondents-Appellants.

Nos. KCD 27952, KCD 27934.

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1976.

R. Leroy Miller, R. Max Humphreys, Allan D. Seidel, Miller, Humphreys & Seidel, Trenton, for O. L. Pike.

Holcomb & Spillman, Trenton, for Robert Morris.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Action by plaintiff for specific performance of oral contract to convey a farm and

for damages; counterclaim by defendants for possession of said farm and for rent and penalty. Judgment for defendants on plaintiff's petition and on their counterclaim for possession; and for plaintiff on defendants' counterclaim for rent and penalty.

Appeal (27952) by plaintiff from the denial of his petition, combined with appeal (27934) by defendants from denial of their counterclaim for rent and penalty. The dispositive questions are whether plaintiff adduced proof sufficient to except the alleged oral contract from provisions of the Statute of Frauds, Section 432.010, RSMo 1969; and whether defendants are entitled as a matter of law to a judgment for rent and penalty. Affirmed.

Plaintiff's theory of recovery is taken from his petition of February 13, 1974, in which he alleged: that defendants as owners of a 70–acre tract of land, acting through defendant O. L. Pike on or about April 9, 1969 (orally) agreed to sell and deed said land to him for $5,000, for which he was to pay $1,000 down with defendants to carry the balance for 10 years, payable in annual installments of $400 at 7% interest, "which offer Plaintiff accepted"; that pursuant to said agreement, plaintiff bulldozed brush, purchased roofing for the house, and has since lived on the farm and treated and claimed it as his own, relying on defendants' promise to convey title to him, and, in so doing, has been prevented from purchasing other farm or farms and from bettering his condition in life; that he made arrangements to finance the down payment, requested defendant O. L. Pike to furnish a deed to said real estate, and stood ready at all times to give defendants a note and deed of trust for the balance of $4,000 payable over a 10–year period; that defendant O. L. Pike informed plaintiff that the same would be done, "but did not want to have any * * * papers formalizing the contract written up until the following year, and after January 1, 1970"; that plaintiff thereafter offered on two occasions to complete the contract, and defendant O. L. Pike acknowledged he had sold the farm to him

for $5,000 but refused and neglected to furnish him with a title deed; that defendant O. L. Pike acknowledged to others that he had sold the farm to plaintiff and informed him that he had never "welched" on a contract, but defendant O. L. Pike had refused and still refuses to make an execute a deed to convey said land to him. By a second count, plaintiff alleged that by reason of said breach, he sustained damages. His prayers were for specific performance of the alleged contract, and for $13,000 damages for its breach.

Defendants admitted their ownership of the farm, alleged that improvements on the farm and plaintiff's occupancy were pursuant to an oral lease agreement between plaintiff and defendants made prior to April 9, 1969, and asserted defenses of the statute of frauds and laches. Defendants' theory of recovery is taken from their counterclaim in which they alleged: that from April 8, 1969, to the present, plaintiff occupied the farm as a tenant from year to year at an annual cash rental of $200 payable April 8 of each year; that plaintiff paid the rental on April 8, 1968, and April 8, 1969, but has not paid further rental although duly demanded and $1,000 is due and unpaid; that on or about February 6, 1974, defendants served plaintiff with notice to vacate and demand for possession of the farm on or before April 8, 1974, and plaintiff has failed and refused to surrender the farm to defendants. Defendants' prayer was for $1,000 accrued rentals, and for $400 penalty by way of double rent for withholding the premises after the notice to vacate, and for possession of the farm.

Plaintiff's version of the evidence: By oral agreement he rented and took possession of the farm in question as a tenant of defendants O. L. and Edna Pike in April, 1967, at a cash rental of $200 per year, and paid the rent in each of the first two years. On April 9, 1969, he entered into a verbal agreement with O. L. Pike for sale of the farm, covering "the tract to be sold, the total price, amount of the down payment, and rate of interest." He tendered the down payment of $1,000 but Mr. Pike refus-

ed to accept it, stating, "I don't want nobody's money until he's got something to show I got it." Mr. Pike also told him not to worry about getting papers for sale of the farm signed because he had never "welched" on a deal. Mr. Morris arranged for financing the purchase with Home Exchange Bank of Jamesport. He was advised to give a check for the purchase price and that a note would be drawn after the purchase was consummated. In May, 1969, he hired Dale Rosson and his bulldozer and paid for three and one-half hours' work to clear three to five acres of timber and brush from the farm. He also secured help from Richard D. Clark in repair of up to a quarter mile of fence and for repair of the dwelling house. He did not buy any other farm because he thought he was "tied up on this one." He contracted to remove a 60′ × 40′ barn from an area farm and secured help to take it to this farm with intention to erect it on the farm. None of the owners demanded rent other than that paid as aforesaid except as may have been implied in the notice to vacate. He had never been previously involved in a purchase of land. Defendants own over 1,000 acres of land acquired through several purchases, which acquainted them with the paperwork involved in a farm sale. In the spring of 1970, he went to Mr. Pike's hog lot at a time "we took care of some hogs" or "was trying to buy some hogs off from him," and "told him his thousand dollars was ready any time he wanted it and the back taxes, why, I would take care of it and the back interest." Mr. Hugh Campbell, a real estate agent, sought to list the Pike farm for sale and was told by Mr. Pike that the farm had been sold to Mr. Morris.

Mr. Pike's version of the evidence: The oral agreement for rental of the farm also provided for Mr. Morris to repair and maintain the house and fences. Mr. Morris had to do some plastering, papering, painting and roofing before he could occupy the house. The fences also needed repair before stock could be run against them. Mr. Morris furnished any work and materials for the house and fence repairs pursuant to the rental agreement of 1967. Mr. Pike

acknowledged that around April 9, 1969, the owners orally agreed on a sale price of $5,000 on the farm with $1,000 down and the balance to be carried at 7% interest. There was no agreement "as to how much per year he would pay," or how many years he would pay, or when the transaction would be completed. The owners were unwilling to accept any money without completing the paperwork necessary to the sale. There was no agreement with respect to taxes, insurance, abstract, and when and by whom the paperwork would be accomplished. The conversation (on or about April 9, 1969) relating to a sale took place in a field where Mr. Pike was disking cornstalks preparatory to spring plowing. Mr. Pike did not remember any other conversation between himself and Mr. Morris concerning a sale except upon an occasion when he stopped by Morrises and asked Mr. Morris to have the papers made. Mr. Pike's understanding was that Mr. Morris was to see to the paperwork and that the sale would be made by a "contract and when the contract was paid off he would get the deed and abstract." These circumstances and stalemate existed for four years until the owners served the notice to vacate effective April 8, 1974. The owners were unaware of any roofing or fencing, and did now know that a bulldozer had been on the farm. Any bulldozer work would have been without their permission. Richard Trickel, a neighbor to the farm in question, noted that all the fences between the two farms were in poor condition and when he asked Mr. Morris about fixing the fence, Mr. Morris said he was not obliged to fix the fence.

No findings of fact were requested, and the court made no findings of fact or conclusions of law. The case is for review upon both the law and the evidence with due regard to be given the opportunity of the trial court to have judged the credibility of the witnesses. See Rule 73.01.3(a), (b), V.A.M.R., and its construction, *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

Appellant Morris contends the court erred in denying enforcement of the alleged

oral contract "as there was evidence sufficient to establish a contract and remove it from the Statute of Frauds"; and that depriving him of the benefit of the contract was unjust because of his "detrimental reliance on the oral contract." He contends also that the "circumstances do not indicate the propriety" of laches as a defense.

The statute of frauds in Missouri provides:

"No action shall be brought * * * upon any contract made for the sale of lands, * * * unless the agreement upon which the action shall be brought * * * shall be in writing and signed by the party to be charged therewith * * *." Section 432.010, supra.

■ The foregoing statute bars enforcement of the oral contract alleged to exist between Mr. Morris and the Pikes unless he is entitled to have it excepted from the statute under well-defined rules of procedure, i. e.: "(1) the alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made, and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is referable solely to the contract sought to be enforced and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed

made before the acts of performance relied upon were had." *Walker v. Bohannan,* 243 Mo. 119, 147 S.W. 1024, 1028[1], 1029 (1912). See also *Hobbs v. Hicks,* 320 Mo. 954, 8 S.W.2d 966 (1928); *Anderson v. Abernathy,* 339 S.W.2d 817 (Mo.1960), and *Pointer v. Ward,* 429 S.W.2d 269 (Mo.1968), dealing in particular with the elements of part performance of and reliance on the alleged oral agreement; and *Ray v. Wooster,* 270 S.W.2d 743, 751[6, 7] (Mo.1954), dealing with the element of time.

■ The evidence, viewed as required by the rule and under the foregoing principles, supports the court in its denial of specific performance of the agreement in question. The evidence shows disputed and unresolved matters of contract such as the nature of the agreement, i. e., whether it was for a conventional sale or a contract for deed, tender of down payment, terms of payment, time of payment, dates of payment, time of closing, preparation of instruments, insurance, taxes, and abstract. It is essential to a concluded contract subject to specific performance that there be a meeting of the minds upon terms so definite that promises and performances are reasonably certain and none are in doubt or subject to future ascertainment. *Ellison v. Wood Garment Co.,* 286 S.W.2d 27, 31[8] (Mo.App. 1956). The court cannot make a contract for the parties, and if the agreement sought to be enforced is indefinite or incomplete, cannot decree specific performance. *Wilkinson v. Vaughn,* 419 S.W.2d 1, 5[3] (Mo. 1967).

The foregoing weaknesses are amplified by the remote and casual nature of the conversations which appellant contends gave rise to the alleged contract. The evidence shows that the two conversations concerning sale of the farm took place five years and four years prior to this action to secure performance. The first took place in the owners' cornfield during a disking operation; the second took place in the owners' hog lot in Mr. Morris' recollection, and at Mr. Morris' home in Mr. Pike's recollection.

Nor is there a showing of part performance by work done to require enforcement

of the contract. The initial occupancy of the farm by Mr. Morris was as a tenant under an oral agreement to pay an annual cash rental and with the obligation to maintain the property. Work performed on the house was necessary to make it habitable; repair of fences was necessary to running stock. All such refers to the initial oral lease of the farm as well as to the alleged oral agreement for sale of the farm. The bulldozing was limited to clearing brush and was so inconsequential that Mr. Pike was unaware that a bulldozer had been on the farm. All of these acts said by appellant to constitute part performance are consistent with continuance of possession under the oral lease agreement. None of them suggests "a radical change in the attitude of the contracting parties towards each other; a change consisting of acts done; a notorious change, which itself indicates that some [new] contract has been made between the parties." *Emmel v. Hayes,* 102 Mo. 186, 14 S.W. 209, 210 (1890). See also *Willey v. Talkington,* 312 S.W.2d 77 (Mo. 1958). In order for acts done in alleged performance of an oral contract to qualify the contract for enforcement, they "must be referable solely to the contract [sought to be enforced] and explicable on no other reasonable theory." *Hinkle v. Hinkle,* 236 S.W. 30, 34[4] (Mo.1921).

With respect to appellant's asserted denial of benefits by the court's refusal to recognize an enforceable contract, suffice to say that absent a contract, there is no breach of contract upon which to consider an award of damages.

With the case in this posture, it is unnecessary to discuss the availability of defense of laches.

Appellants Pike contend the court erred in failing to sustain their counterclaim for rent and penalty.

With respect to rent, the evidence shows that plaintiff paid but two years' rent; however, evidence to show an expectation of, or demand for rentals for subsequent years by defendants is lacking. This court defers to the trial court's resolution of the issue against defendants.

Appellants Pike argue that Section 441.-080, RSMo 1969, authorizes penalty by way of double rent for plaintiff's occupation of the farm after the notice to vacate of February 7, 1974.

Section 441.080, supra, applies to tenancies for life or years. It has no application in this case because Mr. Morris was neither a tenant for life nor for years. See distinctions, 49 Am.Jur.2d, Landlord and Tenant, Sections 65, 69, 70, 73; Section 441.050, RSMo 1969.

Judgment affirmed.

All concur.